Thank you. May it please the court, counsel, Brandon Williams on behalf of Appellant Beckford Tester. Is he related to the Senators of Montana? Not that I'm aware of. He's limited to one to two step taps, though. So, in this case, the... Simple one to two. Simple one to two. Thank you, Your Honor. Don't just say one to two. Simple one to two. So, at the heart of this case is the incompatibility between the reasoning level that the... reasoning level required to perform the... really just the cannery representative occupation. The other occupation is reasoning level three, and I don't think there's really a dispute that that's compatible. But the residual functional capacity of the RFC limited Mr. Tester to simple one to two step tasks. Now, if you know that, under the general educational development in the dictionary of occupational titles, it sets forth, it defines the various reasoning levels. And the level one reasoning really tracks verbatim the language in the RFC, stating that applied common sense understanding to carry out simple one or two step instructions. Now, legally, the legal foundation of the ALJ's error here was a failure to resolve an inconsistency between the vocational expert's testimony and the DOT under Social Security Ruling 00-4P. The government argues there's no inconsistency built in. The government does argue that. I think what's most compelling foremost is that the language is actually tracked between the RFC and the definition of reasoning level one. And simple one to two step tasks isn't really a term of common usage. Counsel, so you're asking this court, as I understand it, to send this case back to the ALJ to resolve, to provide some more meat on the bones as to this discrepancy, correct? That's correct, Your Honor. And it could be. In fact, resolve the conflict if there is one. To. I mean, if there is no conflict, then we don't have a problem affirming, right? But we have to find a conflict. And then after finding the conflict, we have to say it needs to be resolved and the ALJ should have resolved it before determining the disability. That's correct, Your Honor. And what's, I think, important to keep in mind with respect to that is that all that the vocational experts can simply offer under this court's jurisprudence a reasonable explanation for the inconsistency. And that would satisfy, that would ameliorate any inconsistency between the VE's testimony and the DOT. And I think that a case like this sort of exemplifies the need to do that because in Mr. Tester's case, if you look at the definition of level one reasoning, I'm looking specifically, you deal with occasional or no variables. The definition of level two reasoning is involving a few concrete variables. Now, looking at the description of the cannery worker position under the DOT, you can see that it patently involves a few variables and not occasional or no variables. It involves assorting products according to size and color. So there's some discretion there. And I think a simple one- to two-step task is more of an occupation that requires, again, occasional or no variables. I did think of an assembly line a lot of times, performing the same line. I had a very serious illness. That's correct, Your Honor. Do you want to describe it so the folks in the audience know what we're talking about? Certainly. He was born, Mr. Tester, the appellant in this case, was born with hydrocephalus, which is essentially swelling in the brain. And he was given a shunt since birth. It deeply affected him his whole life. He was in special education his whole life. It's caused by a microorganism. Pardon me, Your Honor? By a microorganism. You mean as opposed to it's organic in nature, as opposed to. Most of the time, I don't know if this is responding to your question or not, but most of the time, a lot of the time, I'll say, that we see a one- to two-step task case, you're dealing with a mental impairment. In this case, Your Honor, we're dealing with a severe organic impairment that he testified caused him debilitating headaches and deeply affected his concentration. And he, I mean, I don't see that a man in his position, or someone in his position, in fact suffering from chronic debilitating headaches that seriously compromises ability to concentrate, could exercise the sort of discretion dealing with a few concrete variables that level two reasoning calls for. In counsel, in a lot of these cases that we see, there's a dispute as to whether the person really suffers at all. I take it in this case, there's no such dispute over the condition that your client has. Now, there may be a dispute as to what he can do with that condition, but in terms of him actually suffering from this condition, there's no dispute there. That's correct. The government, the commissioner disputes the level of, the impact of his impairment on his actual ability. But, no, this is a physical impairment case. And to be clear, so what you're asking us to do in this case is you're saying, well, there's the one-two, he was given the one-two, but then he was told he could do a job that's not consistent with one-two. And so you're asking us to send this back to the ALJ to reconcile that. That's the relief you're seeking. That's correct. And if that is correct, tell me how I get around MISL, or missile, or whatever you call it, M-E-I-S-S-L. I mean, doesn't MISL say simple is not inconsistent with detailed but uninvolved, which is level two. MISL held that the simple routine, we call it simple routine tasks limitation usually, and this court recently addressed that in Zavalin v. Colvin. And MISL dealt with that mental limitation, cognitive limitation, not the more restrictive one- to two-step limitation. And as far as the fact that the definition of reasoning level one says involves simple one- or two-step tasks, I don't think that simple complicates the issue because it's also used in simple routine tasks. But I guess my worry is here I seem to be MISL saying that simple is not inconsistent with reasoning level two. But then I go to schemes, and I look at what they said there, and they seem to suggest that by putting simple with one- to two-step work, that that may be inconsistent with reasoning level two. Do you agree? With reasoning that by? In other words, by putting simple one- to two-step work rather than just simple work, that that might make it inconsistent with level two. I would agree with that. That's my position. Insofar as one- to two-step tasks would limit the claimant to performing only reasoning level one work. Well, and so it seems to me that what you're really saying is you don't have to buy what I'm saying, but you just have to say it's inconsistent and the ALJ should have addressed it. You know. I don't know. That's what I think your argument is, but I want to make sure. Thank you, Your Honor. My argument is that a one- to two-step, simple one- to two-step tasks limitation in the ROC is, permits only, is inconsistent only with level one reasoning work, unless the vocational expert offers a reasonable explanation why the claimant could perform a certain job. That didn't happen here. No, that didn't happen. And there's no. Yes, that didn't happen here. That did not happen here. That's correct, Your Honor. And if this Court has no other questions right now, I think I'm. You want to reserve the rest of your time? Yes, please. Thank you. Good morning, Your Honors, and I please the Court. I'm David Burdett from Seattle, representing the Acting Commissioner, Carolyn Coleman. Mr. Tester, as counsel indicated and as Judge Ferguson indicated, suffers from hydrocephalus, and he has this shunt in his head and. Blue about his brain. Correct. Correct, Your Honor, and it is a very serious condition, and it's a severe impairment, and his capacity is quite limited. However, his capacity is not so limited that he has not been able in the past to. It's a permanent condition. It is a permanent condition, Your Honor. Correct. That is correct. Correct. That is correct, Your Honor. And it's getting worse. At least by his testimony, it's getting worse. Apparently, Your Honor, it's getting worse because it's causing him, by his testimony, it's causing him more headaches. And actually, not only by his testimony, but we accept the fact that it is. Well, I thought you did. That's why I asked you the question. Yes. Yes. Which is why I wanted to get you past that. So it's getting worse. It's getting worse. And so here we are. We're at a situation where the RFC says simple one- to two-step work, and then the V.E. gets up and starts talking about him doing reasoning level two work, which doesn't really have the wording of simple one- to two-step work. And nobody asked the V.E. to explain. And the ALJ then was left with having a conflict and not ever resolving it, but determining that he was disabled. That's the worry I have for the government. That is the concern, Your Honor, but I disagree that it's an inherent conflict. Why is it not an inherent conflict? That's the question. Yes. I disagree that simple one-to-two-step work is an inherent conflict with the DOT. Look at reasoning level two. Look what it actually says. There are six levels of reasoning, by the way, six GED levels of reasoning. Reasoning level two says, apply common-sense understanding. I think, Judge Smith, you got to this earlier. Apply common-sense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations. Now, and Rissell suggests that simple would not be inconsistent with detailed but uninvolved. And then Skeens says, but the addition of one-to-two-step work to simple changes the requirements so that they are inconsistent. Yeah. Well, as you will guess, Your Honors, I agree with Rissell and I disagree with Skeens. Well, and neither are controlling on us, right? Correct. And so at that point, given I got a whole list of cases that go with each one of those. They're the major cases. They're all citing those. But given that that inconsistency exists in the law, it seems logical, then, that if the V.E. suggested a level two reasoning work and this law is on the books and the RFC says simple one-to-two-step work, that somebody should have asked, V.E., explain this. Seems to me the language of reasoning level one is simple one-to-two-step work. And you're putting them in reasoning level two. Explain it to us so we can make a reasoned decision. And nobody did. And all that they're asking for is send it back. Make them give a reason why they put it in reasoning level two when it obviously seems to reach reasoning level one. And then I say to myself, I don't know why the government opposes that. I have two reasons, Your Honor. I have two reasons why we oppose that. One is general and one is particular to this case. Okay. The general one, Your Honors, is that we disagree as a matter of principle that the reasoning levels, which, again, there are six of, necessarily track with the RFC language. We would like to point out that the SVP levels, the levels of specific vocational preparation, and I'm sorry for all these acronyms in the DOT, control. Now, the SVP levels, the levels of specific vocational preparation that are associated with particular jobs, indicate how much time it takes for a person to learn these jobs. Counsel referenced Social Security Ruling 00-4B, and it says SVP levels of one to two are unskilled work. That is work that needs little or no judgment to do simple duties that can be learned on the job in a short period of time. I don't want to take away from your argument, but, again, I think you're missing my question. If all of that is as easy as you say it is, and we have this inconsistency in the law from two different cases, and all are progeny, it seems to me that in this case, when this came up, knowing this happened and the inconsistency of the two different cases and their progenies, somebody should have said to the VE, explain it. They could have given the explanation you want to give me, but they didn't. They didn't say anything. All they did is say, oh, well, they didn't even ask. What do we do in the next case where someone's found to be Step 1-2, and they say, but he can be a rocket scientist? Can he be a rocket scientist? And the vocational expert says, yep, and there's no explanation as to why you can get from Step 1-2 to rocket scientist. What would we do in that situation? Well, in that situation, Your Honor, you definitely have to send it back. Okay, so if you send it back there, then what's the harm of doing it here? What is the harm? Yeah. The harm is waste of judicial and administrative resources in a case where … That goes on all the time. That's a big jump. Oh. We've got the true pragmatists sitting here in the middle, so don't give us that kind of hard-on. It's going on right now. Well, I mean, look, it seems to me that you might be – if this case gets sent back, what you just said a moment ago may be totally validated below. It may be totally validated, and Mr. Tester may be out of luck. I don't know. But it seems to me that what you're asking us to do is, in a sense, to play a role of doctor, in a sense, to try to see, well, does it really make sense what the explanation was? And it seems to me, as Justice Smith suggested, I'm not – I might not be qualified to be up here, but I'm certainly not qualified to be a doctor. And if we send this one back, we can at least get that analysis done to where it can be meaningful review, whereas here it's just kind of this guessing game that we're doing, and that's not what we're supposed to be doing in these circumstances. We're supposed to be reviewing a record that here doesn't really exist. Respectfully, Your Honor, no, I'm not asking you to play doctor. I'm asking you not to play doctor. I'm saying the harm – let me give you a better answer on what the harm is. What they want is a published case that says inherently a GED level 2 reasoning equals – is inequal to simple one- to two-step tests. They want that rule to be black-letter law, and it isn't anywhere. Now, the case of Zavalin that he referenced that this Court decided in February of this year, it cuts against us a little bit, but that was – Well, it cuts against you a lot. Yeah. Because you had the same kind of a thing happen in Zavalin, except that there it was between reasoning level 3 and reasoning level 1. Your Honor? Yes. And at that point, they went through the Court, deciding side-by-side the definitions as to what was consistent and what wasn't. And afterwards, they said, there's a conflict. Send it back and let the ALGHA address it. And so I said to myself, seems to me that's pretty good precedent for doing the same thing here. But interestingly, Your Honor, you're right, but interestingly it was actually between reasoning level 3 and reasoning level 2. Right. I understand. And Igor Zavalin was an 18-year-old young man, an immigrant from Russia five years previously, so he spoke English as a second language. Yet he was in an even worse case, Your Honor, than Mr. Tester. Eighteen-year-old, had been in this country five years, had cerebral palsy, a learning disorder, and various other impairments, and had never worked a day in his life. And this Court said, or at least implied, that reasoning level 2 was suitable for a person like Igor Zavalin. And Mr. Tester, and this is the second point that I was getting to, the specific point of why he wants it to be a wrong decision for this case. Mr. Tester was working as a small parts assembler, a machinist. In fact, he testified, it was characterized in DOT language as a small parts assembler, but he was working as a machine tool operator in a plumbing parts supply company, creating plumbing parts by turning a lathe. But that's why I ask you, and his condition has worsened. Yes, Your Honor, his condition has worsened. And therefore, I think it's a little bit unusual that you would say, okay, the condition has worsened. I agree. I almost stipulate to it. And he has these conditions, and yet he's absolutely a level 2. Hear me out. I'm hearing you. Respectfully. I'm just trying to make sure you understand why I'm having a tough time hearing it. Yes, sir. Yes, Your Honor. The problem is his condition has worsened. His condition has worsened with respect to the headaches that cause him to be worried about working on those kind of tools. And that's reasonable. He doesn't have to go back to working on those kind of tools. This is a step 4 case. But the only problem that they have with the ALJ's ruling is this argument about the reasoning levels. And for all we have in the record, his reasoning level has not worsened, did not worsen, between 2007, which was the last year he was working full time as a machinist, and 2011, the time of the administrative decision. His reasoning level is the same. Now, the small parts assembler job was a reasoning level 2 job. And he was able to work at that and earn $42,000 or more in the year 2007. I don't want to stop you. I want to hear you end your argument. His reasoning level has not declined from that time to this. What has changed about his condition is that it has worsened, and he no longer has to work on that job. But the adaptation that accommodates his worsened condition is that the ALJ says he can do light work, simple, unskilled, one-to-two-step tasks, and he doesn't have to work around hazards. He doesn't have to work around dangerous machinery, vibrations, and the like. That accommodates the worsening of his condition. His reasoning level, his ability to reason, has not changed from the time when he was able to work at that job where he could command a salary of $42,000 in 2007 until the end of the period at issue in this case. It did not change. If he could work at a reasoning level 2 job at that time, then the ALJ was right to say that he could work at a reasoning level 2 job in 2011. Again, I think that's a good explanation. We should have allowed the BE to talk about as well as the ALJ rather than you to me. But that's another point. I got another question. If I say that reasoning level 1 and reasoning level 2 are the same as it relates to this particular situation, because I have Meisel, which says simple is not inconsistent with detailed. I have Schemes, which says one-to-two-step work is not consistent with level 2. And now you're going to have me buy off on the idea that simple one-to-two-step work can be level 1 and 2. What is my distinction between 1 and 2? Because it seems to me you are really telling me to craft a situation where there is no 1. It's only 2. What is the 1? It seems to me that if I'm going to have a reasoning level 1, this is deduction. This is just theory from an old Idaho Yehoo who's trying to understand this. But it seems to me, nonetheless, that if you're going to make reasoning level 2 the same as reasoning level 1 for simple one-to-two-step level work, I don't have anything in level 1 anymore. Level 2 is the only thing I got. There's no way to distinguish between them. Well, where do I distinguish? The only thing that I can say to that, Your Honor, is that there are, unfortunately, I should have had a list ready, but there are a number of jobs, there are many jobs that are under level 1. I'm talking about the definitions that I look at for reasoning level 1 and reasoning level 2. And I'm talking about the definitions that we've got in the reasoning levels, and I'm trying to make them so I at least can have some reason to understand what they are. If I make reasoning level 2 the same as 1, there isn't going to be a 1. Well, Your Honor, the only thing I can give you is this, and it may not be satisfactory, but it's probably the best I can do under the circumstances. I would invite you to say that the court is not the one to make the per se rule distinguishing 2 and 1. That the ALJ should after the AVE tells them, which means remand. Not necessarily. Not necessarily. I won't go on arguing the point forever, but that the ALJ as fact finder will exercise its judgment. And the point that I want to stick up for, and this will be the last time that I dive into it, but the point that I want to stick up for is that the ALJ doesn't need to do that because of the SVP levels, which suggests to an ALJ who's informed on the DOT, as this one was, that that could be an unskilled, simple, one- or two-step task job. Which I'd like to have him say. Like what? That would have been better, Your Honor. Like what? Like what kind of job? Yeah. I should have had a list of step-one jobs, Your Honor, and I don't. But there are many in the DOT. Ticket taker, for instance. Ticket taker? Yeah. You have to look at the tickets. I used to work at Will Call. It's not that easy. All right. I had a case a long time ago where someone had just all kinds of mental problems. He was agoraphobic. He couldn't stand to be around people. He only wanted to work at night all by himself. And this went on and on and on. And so we asked him, well, what sort of jobs would be available for him in the economy? And he thought for a while. And he said, well, he could be a night watchman in a funeral parlor because not dealing with people is quiet. Bad case. Well, you hear all kinds of crazy explanations of what poor people can do from some of these experts that come and testify. But maybe there's no difference between one and two, level one and level two. I've tried to figure it out. Well, I would just say, Your Honor. They're about simple one- and two-step operations. And by putting two parts together, they're simple to do. And he may fall into that. But he has a disease that gets progressively worse, right? Yes, Your Honor. He has severe headaches, migraines, and all that. He has to take medication. And that can have an effect on his work, too, his coordination. So, you know, I can see why the government, some of these claims would stiffen his back. But I don't understand what the problem is with this man. He's not a believer. He's just an unfortunate soul who came into this life with a disabling illness. It's never going to leave him. It's going to get worse. And he seems to be trying. He's a good father. He walks the kids to school and all the rest of it. So sometimes a little kindness doesn't hurt. He's a good man, Your Honor. He has medical problems. But I am in this position, of course, and it is a legitimate argument that his reasoning, his reasoning only, not the headaches and the other side effects of his condition, his reasoning has not declined from that time to this, from 07 to 11. And if he had the brainpower to do the job in 07 that was a reasoning level 2, then in 11 he had the brainpower to do the reasoning level 2 job. And that basically is the best we can do. Well, he takes – he doesn't show up every day, does he, at work? I mean, he has problems with the migraines, doesn't he? Yeah, he does, Your Honor. He's crossing. Yes. Yes, he is. So maybe we ought to give him a break sometime. All right, Your Honor. Thank you. No further questions. Thank you. We're all one country. No, what do you want to say? Thank you. Just a few points. Let's start. Thank you. First of all, the government is insistent that his reasoning level didn't change from one point to the next over the course of years. I don't – there's no real authority for that, that a reasoning level is static. In fact, I refer this court to Zavalin, where they specifically say that the reasoning level corresponds to the claimant's ability to perform the job. And they look at the definitions of reasoning level again, and they all talk about to apply – they begin with apply. They – increasingly difficult principles of rational thought and deal with increasingly complicated problems. Now, a person's ability can – to perform to – a person's ability to apply something or other as defined in the reasoning levels is definitely impacted by their limitations. That's why presumably he applied for disability. In fact, I don't know if the government's confusing reasoning level with perhaps IQ, which is generally considered to be static at a certain point. Reasoning level, there's no authority for that. The government relies on MISL. However, MISL clearly distinguishes SPP from reasoning level. It goes out of its way to do that. And the facts here simply don't support the government's theory of the static reasoning level. I've always found that their income history is a good place to start when you're trying to kind of size someone's claim up. I was making $42,000 in 2007, $14,000 the next year, and nothing after that. I guess I just – perhaps he didn't like the job anymore. Actually, I don't – the government's not implying that. But what I'm saying is that that clearly suggests to me that the claimant was having serious problems, and that his reasoning level was diminishing. His ability to perform the tasks required for each job. And regarding the – quickly regarding the ALJ's duty under 00-4P and the corresponding CFRs, this court has said that the ALJ has an affirmative responsibility to ascertain any conflict between the VE's testimony and the DOT. Otherwise, you have kind of a meaningless tautology where the ALJ asks the VE, is your testimony consistent? And the VE then confirms that their own testimony was indeed consistent. And that's kind of a meaningless process to determine whether there's a conflict, if he can just simply rely on the VE, who presumably found their testimony consistent with the VE, with the DOT, or they wouldn't have testified that way in the first place. So. But in this case, no one even asked. That's correct, Your Honor. And we really can't get into the question of how far do they have to go, because it isn't before us, right? That's the next big legal question on the horizon somewhere, Your Honor, which is how far are they – Not in this case. Not in this case, because it wasn't done at all. And if this court has no further questions, I thank you for your time. He takes quite a few talks. Pardon me? He takes quite a few drugs. He takes drugs that certainly don't advance his reasoning level. Painkillers a lot. He takes Oxycontin. That's right, because for his headaches. That's a narcotic. That is a narcotic, yes. But there's no finding of drug impairment in this case. The man's in pain is what the record tells me. He's got these drugs. How many drugs does he take? I believe, Your Honor, I don't know offhand. I know that the narcotic pain medication was – that combined with the general severe headaches was why the ALJ presumably found him so limited to one- to two-step tasks. I mean, if you thought of enduring it, having to do any job with a headache, a severe headache, I mean, forget it. Well, there's quite a discussion of that in the medical reports. Excuse me, Your Honor? I said there's quite a discussion of all of that in the medical reports. Yes, there is, Your Honor. The ALJ didn't really flesh the issue out in this case, and interestingly enough, what usually – what this one- to two-step limitation is usually found in the opinions of state agency consultants. That's the Disability Determination Services, DDS, and usually that's where this one- to two-step issue arises. Here, they were dealing only with physical impairments, and the DDS did not evaluate him cognitively the way they would somebody with mental impairments, where they might typically find one- to two-step tasks. Here, the ALJ, well, partially believed his testimony about how very limited he was, and it makes the logical conclusion of that as the one- to two-step limitation. And lastly, as far as administrative resources and efficiency, all it takes is some explanation for the VE. As to how much, that's for another day. Thank you very much.
judges: Pregerson, Smith, Owens